Filed 12/19/14

<u>**CERTIFIED FOR PARTIAL PUBLICATION**</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DOUGLAS ROY LOSA,<br><br>Defendant and Appellant. | F067279<br><br>(Super. Ct. No. 13142)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Madera County.  Dale J. Blea, Judge.

Deanna Lamb, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Brook A. Bennigson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*        Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of the Facts and Procedural History, parts IA., IC., II, and III of the Discussion and the concurring opinion of Justice Peña.

**SEE CONCURRING OPINION**

# INTRODUCTION

The Three Strikes Reform Act of 2012 (hereafter Proposition 36 or the Act) created a postconviction release proceeding for third strike offenders serving indeterminate life sentences for crimes that are not serious or violent felonies. If such an inmate meets the criteria enumerated in Penal Code section 1170.126, subdivision (e), he or she will be resentenced as a second strike offender unless the court determines such resentencing would pose an unreasonable risk of danger to public safety.[1] (§ 1170.126, subd. (f); *People v. Yearwood* (2013) 213 Cal.App.4th 161, 168.)

After the Act went into effect, Douglas Roy Losa (defendant), an inmate serving a term of 25 years to life following conviction of a felony that was not violent (as defined by § 667.5, subd. (c)) or serious (as defined by § 1192.7, subd. (c)), filed a petition for recall of sentence and request for resentencing under the Act. Following a hearing, the trial court found resentencing defendant would present an unreasonable risk of danger to public safety and denied the petition.

In the unpublished portion of this opinion, we hold the People have the burden of proving, by a preponderance of the evidence, facts on which a finding that resentencing a petitioner would pose an unreasonable risk of danger to public safety reasonably can be based. Those facts are reviewed for substantial evidence. The trial court's determination whether to resentence a petitioner, however, is reviewed for abuse of discretion. We also hold recently enacted section 1170.18, subdivision (c) does not modify section 1170.126, subdivision (f). Because we conclude the People met their burden and the trial court did not abuse its discretion, we affirm. We publish our discussion of defendant's claim a petitioner is entitled to proof beyond a reasonable doubt and a jury trial on the "dangerousness" issue based on equal protection principles.

---

[1]     Further statutory references are to the Penal Code unless otherwise stated.

2.

# FACTS AND PROCEDURAL HISTORY[*]

On June 7, 1996, a jury convicted defendant of possessing methamphetamine (Health & Saf. Code, § 11377, subd. (a)) and a small amount of marijuana (*id*., § 11357, subd. (b)). He was found to have suffered multiple prior strike convictions, and, on June 28, 1996, he was sentenced to prison for 25 years to life.

On November 13, 2012, defendant filed a petition to recall his sentence and be resentenced pursuant to the Act. He represented that his strike record consisted of four 1989 convictions for armed robbery, and asserted he would pose no threat to society if released. In support of this claim, he represented he had housing and employment arranged; a large social support network outside of prison; and meaningful insight into his criminal lifestyle and drug addiction, which he had worked hard to correct. He listed the various self-help and educational programs in which he had participated (including earning an AA degree as well as units toward a Bachelors degree), and appended certificates of participation and achievement he earned, as well as laudatory prison "chronos." He later supplemented this information with a statement of his housing, employment, and scholastic plans; intended substance abuse/recovery programs; relapse prevention plan; and support network. He also submitted letters of reference, together with letters of support from family and friends.

The People opposed the petition. They implicitly conceded defendant was not disqualified from resentencing under the Act, but argued he should not be resentenced because doing so would result in an unreasonable risk of danger to public safety. The People pointed to defendant's adult criminal record, which dated back to 1988 and included four robbery and one attempted robbery convictions, all of which included a firearm use enhancement and which resulted in a 10 year 4 month prison sentence; the fact he reoffended within months of being paroled in 1994; and the fact defendant had

---

[*] See footnote, *ante*, page 1.

spent virtually his entire adult life incarcerated or committing new crimes when not incarcerated. The People also pointed to defendant's sustained disciplinary violations.[2] They acknowledged defendant had completed vocational/job training, substance abuse classes, and academic classes as stated in his petition for resentencing, and also acknowledged his parole plans. They argued, however, that as he had no "track record" of living as a free adult and not committing crimes, there was no indication his criminal behavior would change if he were released from prison. They pointed to the fact his criminal behavior had continued while in prison, and argued his conduct continued to demonstrate he was a violent individual who did not believe rules applied to him. The People concluded defendant still posed an unreasonable risk of danger to public safety and was likely to reoffend if released from prison.

The petition was heard on April 10, 2013.[3] The court stated it had reviewed all the pleadings and documents submitted to it, and confirmed the People were not contesting defendant's eligibility for resentencing. The court then stated:

> "So it all comes down to whether [defendant] poses an unreasonable risk of danger to public safety. In reviewing that issue, I considered [defendant's] criminal history, as well as his disciplinary record, while in prison.
>
> "The criminal history I'm concerned with because each of the robbery convictions that he suffered involved the personal use of a firearm. Now, I understand that those are older in time. But [defendant] spent a significant amount of time in prison, so he hasn't been available to

---

[2]  Defendant was found guilty of possession of a controlled substance in 2002, disruptive behavior in 2003, misuse of state property in 2006, excessive contact with a visitor in 2007, failure to comply with emergency procedures in 2007, battery on an inmate in 2008, and possession of a cellular telephone in 2010. For each incident, the People appended prison chronos and findings, giving the facts underlying the violations, as exhibits to their opposition.

[3]  The judge who imposed defendant's third strike sentence was no longer on the bench, so the matter was heard by a different judge. (See § 1170.126, subd. (j).)

reoffend. When he did, when he was sentenced in 1988 for ten years and four months, upon his release, he was arrested and convicted for possession of Toluene .… And then two years later he suffered the present conviction for possession of a controlled substance. So there is a significant history of criminality and violent criminality. I'm concerned about that.

"I'm also concerned that on September 17th, 2010, [defendant] was found to be in possession of a cellular telephone in violation of institution rules. He admitted ownership of the cellular telephone.

"In 2008, … May 31st, he and another inmate physically battered a third inmate on prison grounds. When he was ordered to cease the attack by correctional officers, [defendant] ignored the command and only complied after … an OC grenade was deployed.

"In December of 2007, he actively participated in what was described in the incident report as a prison riot that involved a confrontation between inmates. The report indicates that the confrontation may have been along racial lines. That [defendant] failed to comply with orders of correctional officers to disengage from the conflict and get on the ground.

"I do recognize that [defendant's] position was that he was trying to pull people from the fight. Notwithstanding that fact, he was ordered by correctional officers to disengage, get on the ground and he ignored those orders.

"In 2007 he was involved in an inappropriate contact with a female visitor which is in violation of prison rules.

"He was in 2006 found to be using a prison word processor for a personal letter at a time that doing so was contrary to prison rules.

"In 2003 a correctional officer was advising two inmates of prison procedures. [Defendant] approached and complained of the procedures. When ordered to leave the area, [defendant], according to the incident report, ignored the order and became belligerent and approached the correctional officer in a threatening manner.

"And in 2002 he was found to be in possession of methamphetamine on prison grounds, a violation of prison rules.

"So here's my concern. If [defendant] is unwilling to follow the rules of an institution when he's under direct supervision … how am I confident that he's going to abide by societal rules if he's released from custody and not return to his violent criminality?"

5.

Defense counsel argued "all these things" had to show defendant would be an unreasonable risk to public safety if released, a "pretty high" standard. Counsel pointed out that some of the rule violations were for conduct that would not be improper outside of prison, and none resulted in new criminal charges. He urged the court also to consider the good things defendant had done while imprisoned.

The court acknowledged it had seen the documentation, and noted defendant's achievements for the record. It stated: "So there is [*sic*] certainly positives that [defendant] has availed himself of. [¶] But certainly using a word processor for somebody who is not incarcerated is not a crime. But the bigger question is, since that was a rule — and that's probably the most minor of the matters that I listed. Since that was a rule that was imposed by the prison, what confidence can I have that [defendant] is going to abide by the rules of society? [¶] And now, you said, well, those aren't necessarily indicia of an unreasonable risk to society. True enough. But when [defendant] was last out of prison for an extended period of time, he was committing crimes. And he was committing violent crimes."

Defense counsel responded that defendant had a drug problem at the time, and drugs fueled his behavior. Counsel also pointed out robbery was not a disqualifying crime under the Act. Counsel asked the court not to put much weight on defendant's prior record, given his youth, drug problem, and the hard work he had done since to gain insight into and overcome his drug problem. Counsel acknowledged there was no complete guarantee defendant would be law-abiding when released, but pointed to defendant's detailed parole and treatment program plans, and his desire to become a counselor to help other people in the same situation.

The court then permitted defendant to make a statement. Defendant took full responsibility for his behavior, but asserted that five of his prison infractions stemmed "from a very tumultuous two-year period" in his life. He stated he was a changed man and understood his negative behaviors had consequences. He also detailed his various

6.

accomplishments while in prison, his insight into his criminal lifestyle, and the positive alternatives he now used to ensure a violence-free life. With respect to his crimes and in-prison infractions, defendant represented that his most recent robbery conviction was for attempted robbery, because the clerk noticed the gun had no trigger and took it away from him, although defendant recognized this might not be any comfort to his victims. As for the in-prison fight, defendant pointed out that all three inmates signed chronos saying they could program together and had simply had a fight. Defendant admitted he did not comply with directions during the riot, but pointed out he was not written up for participating in a riot because the officers noticed he tried to keep it from happening.

After further argument, the court stated:

> "Now, this case has conflict in it. I'll admit that. Because in reviewing your [(defendant's)] petition and seeing all that you have done while you've been incarcerated, it is impressive. It's impressive that you are willing to participate with youth and the youth diversion program to keep younger people from following the course that you followed. I believe that you are addressing your addiction and that's a positive thing.

> "Where I'm having trouble is with your unwillingness, apparently, to obey prison rules and the direct orders of prison officials. And that's in a highly controlled environment. That coupled with [defendant's] record of violent criminality involving the personal use of firearms leads the Court to conclude that if [defendant] is resentenced pursuant to Penal Code 1170.126 [it] would present an unreasonable risk of danger to public safety. Accordingly, the petition is denied."

Defense counsel questioned the court about certain aspects of its ruling. The court responded:

> "What the Court is to look at in determining whether [defendant] is an unreasonable danger to public safety is his prior record, his prior criminal record and his disciplinary record while incarcerated. Now, has he committed any violent felonies while incarcerated? No. But has he refused to comply with the rules of the institution? Yes.

> "And so when I look at the totality of the circumstances and I consider that there were multiple times over … the most recent period of

7.

incarceration where [defendant] has refused to abide by not only the rules of the institution but direct orders of correctional officers to stop conduct that he was participating in and he refused to do that, it gives me a very little hope that he would obey the laws of a society when he's released.

"And when you take that into consideration with his past criminal history of violent criminal conduct, I find that he remains an unreasonable risk to society."

## DISCUSSION

Defendant contends we should reverse the denial of his petition and remand the matter with directions that he be sentenced to a determinate term as a second strike offender. Although presented in a somewhat disjointed manner, defendant's multiple arguments and subarguments appear to boil down to two main claims: (1) Defendant was entitled to a jury trial, and proof beyond a reasonable doubt, on the issue whether resentencing him would pose an unreasonable risk of danger to public safety, and (2) The trial court erred by denying defendant's petition. We find no cause for reversal.[4]

### I

### THE APPLICABLE STANDARDS ARE PREPONDERANCE OF THE EVIDENCE AND ABUSE OF DISCRETION.

### A.[*]

In order to be eligible for resentencing as a second strike offender under the Act, the inmate petitioner must satisfy the three criteria set out in subdivision (e) of

---

**4**    The Attorney General contends defendant forfeited any claims concerning the standard/burden of proof by failing to present them in the trial court. We have the authority to reach defendant's claims, regardless. (*People v. Smith* (2003) 31 Cal.4th 1207, 1215; *People v. Williams* (1998) 17 Cal.4th 148, 161-162, fn. 6.) In light of the newness of the Act at the time defendant's petition was heard, as well as his contention defense counsel's failure to raise the issues constituted ineffective assistance of counsel, we review the claims on the merits. (See *People v. Crittenden* (1994) 9 Cal.4th 83, 146.)

*    See footnote, *ante*, page 1.

section 1170.126.**5** (*People v. Superior Court* (*Martinez*) (2014) 225 Cal.App.4th 979, 989.) If the inmate satisfies all three criteria, as did defendant, he or she "shall be resentenced [as a second strike offender] unless the court, in its discretion, determines that resentencing the [inmate] would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) In exercising this discretion, "the court may consider: [¶] (1) The [inmate's] criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The [inmate's] disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (*Id.*, subd. (g).)

The plain language of subdivisions (f) and (g) of section 1170.126 calls for an exercise of the sentencing court's discretion. "'Discretion is the power to make the decision, one way or the other.' [Citation.]" (*People v. Carmony* (2004) 33 Cal.4th 367, 375.) "Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' [Citation.]" (*People v.*

---

**5**        "An inmate is eligible for resentencing if: [¶] (1) The inmate is serving an indeterminate term of life imprisonment imposed pursuant to paragraph (2) of subdivision (e) of Section 667 or subdivision (c) of Section 1170.12 for a conviction of a felony or felonies that are not defined as serious and/or violent felonies by subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7. [¶] (2) The inmate's current sentence was not imposed for any of the offenses appearing in clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12. [¶] (3) The inmate has no prior convictions for any of the offenses appearing in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clause (iv) of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12." (§ 1170.126, subd. (e).)

9.

*Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125; see *People v. Williams*, *supra*, 17 Cal.4th at p. 162 [abuse-of-discretion review asks whether ruling in question falls outside bounds of reason under applicable law and relevant facts].)

> "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, '"[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination … will not be set aside on review."' [Citation.] Second, a '"decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"' [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony*, *supra*, 33 Cal.4th at pp. 376-377.)

"Because 'all discretionary authority is contextual' [citation], we cannot determine whether a trial court has acted irrationally or arbitrarily … without considering the legal principles and policies that should have guided the court's actions." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.) "An abuse of discretion is shown when the trial court applies the wrong legal standard. [Citation.]" (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733.)

Under the clear language of section 1170.126, we review the trial court's ultimate determination whether to resentence a petitioner for abuse of discretion.[6] Of course, if there is no evidence in the record to support the decision, the decision constitutes an abuse of discretion. (See *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1066.) Thus, the

---

**6** We categorically reject defendant's claim the trial court's ruling is subject to our independent review. The cases cited by defendant as authority for this assertion (*People v. Roberts* (2010) 184 Cal.App.4th 1149, 1178-1179; *CBS Broadcasting Inc. v. Superior Court* (2001) 91 Cal.App.4th 892, 905-906) manifestly do not deal with statutes that contain language analogous to, or address situations similar to, section 1170.126, subdivision (f).

questions arise which party has the burden of producing such evidence, and to what degree of certainty, and what level of support — what standard of proof — is required for a trial court to rely on such evidence?  (See *People v. Mower* (2002) 28 Cal.4th 457, 476.)

Division Three of the Second District Court of Appeal has stated that, where a court's discretion under section 1170.126, subdivision (f) is concerned, the People bear the burden of proving "dangerousness" by a preponderance of the evidence.  (*People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1301-1305 & fn. 25 (*Kaulick*); see Evid. Code, § 115.)  That court determined this is so because "dangerousness is not a factor which enhances the sentence imposed when a defendant is resentenced under the Act; instead, dangerousness is a hurdle which must be crossed in order for a defendant to be resentenced at all." (*Kaulick*, *supra*, at p. 1303.)

We agree with *Kaulick* that the applicable standard is preponderance of the evidence.

In *People v. Blakely* (2014) 225 Cal.App.4th 1042, 1059-1062 (*Blakely*), we rejected the claim an inmate seeking resentencing pursuant to section 1170.126 has a Sixth Amendment right to a jury determination, beyond a reasonable doubt, on the question of conduct constituting a disqualifying factor.  We concluded that *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*) and its progeny (e.g., *Alleyne v. United States* (2013) 570 U.S. ___ [133 S.Ct. 2151]; *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*); *Blakely v. Washington* (2004) 542 U.S. 296) "do not apply to a determination of eligibility for resentencing under the Act." (*Blakely*, *supra*, 225 Cal.App.4th at p. 1060.)

In *Blakely*, we relied heavily on *Kaulick*.  In rejecting application of the beyond a reasonable doubt standard, *Kaulick* explained:

> "The maximum sentence to which Kaulick, and those similarly situated to him, is subject was, and shall always be, the indeterminate life

11.

term to which he was originally sentenced. While [the Act] presents him with an opportunity to be resentenced to a lesser term, unless certain facts are established, he is nonetheless still subject to the third strike sentence based on the facts established at the time he was originally sentenced. As such, a court's discretionary decision to decline to modify the sentence in his favor can be based on any otherwise appropriate factor (i.e., dangerousness), and such factor need not be established by proof beyond a reasonable doubt to a jury. Kaulick would interpret the retrospective part of the Act to mean that every petitioner who meets the eligibility requirements for resentencing is immediately entitled to the recall of his or her sentence, with resentencing to a second strike term the presumptive sentence, and resentencing to the current third strike term available only on proof beyond a reasonable doubt of the additional factor of dangerousness. There is nothing in the statutory language to support this interpretation." (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1303.)

*Kaulick* went on to discuss the United States Supreme Court's conclusion in *Dillon v. United States* (2010) 560 U.S. 817, 828 (*Dillon*), that "a defendant's Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt do not apply to limits on downward sentence modifications due to intervening laws." (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1304.) *Kaulick* found *Dillon*'s language "equally applicable here. The retrospective part of the Act is not constitutionally required, but an act of lenity on the part of the electorate. It does not provide for wholesale resentencing of eligible petitioners. Instead, it provides for a proceeding where the original sentence may be modified downward. Any facts found at such a proceeding, such as dangerousness, do not implicate Sixth Amendment issues. Thus, there is no constitutional requirement that the facts be established beyond a reasonable doubt." (*Kaulick*, *supra*, at pp. 1304-1305.)[7]

_____

[7] *Pepper v. United States* (2011) 562 U.S. 476 [131 S.Ct. 1229] does not undermine *Dillon*'s or *Kaulick*'s reliance thereon. Unlike *Dillon*, *Pepper* involved a plenary resentencing after the defendant's sentence had been set aside on appeal. (*Pepper*, *supra*, 562 U.S. at p. ___ [131 S.Ct. at p. 1236].) We reject defendant's assertion section 1170.126, unlike the provision involved in *Dillon*, creates a mandatory reduction in sentence and does not provide the court with a limited discretion to modify an existing sentence.

Although in *Blakely*, we applied *Kaulick*'s analysis to the initial determination of eligibility for resentencing under the Act (*Blakely*, *supra*, 225 Cal.App.4th at p. 1061), it applies equally to the issue whether resentencing the petitioner would pose an unreasonable risk of danger to public safety. Denial of an inmate's petition for resentencing under the Act does not increase the penalty to which that inmate is already subject, but instead removes him or her from the scope of an act of lenity on the part of the electorate to which he or she is not constitutionally entitled. (*Blakely*, *supra*, at p. 1062.)

Defendant argues, however, that the presumptive sentence for an eligible inmate has effectively been reduced to a "'two-strike'" sentence. He first points to the syntax of section 1170.126, subdivision (f). Relying on *People v. Guinn* (1994) 28 Cal.App.4th 1130, 1141-1142, 1145 and its progeny (*People v. Murray* (2012) 203 Cal.App.4th 277, 282; *People v. Blackwell* (2011) 202 Cal.App.4th 144, 159-160; *People v. Ybarra* (2008) 166 Cal.App.4th 1069, 1089), all of which deal with section 190.5, subdivision (b),[8] defendant contends the "shall"/"unless" formulation employed in subdivision (f) of section 1170.126 means a two strike sentence is now the presumptive punishment, and the court retains only "'circumscribed discretion'" to select the indeterminate term. Because a defendant can be subject to the indeterminate term originally imposed only upon a finding of current dangerousness, defendant argues, a second strike term is now the presumptive maximum sentence for defendants meeting the criteria of section 1170.126.

---

[8] Section 190.5, subdivision (b) provides, in pertinent part: "The penalty for a defendant found guilty of murder in the first degree, in any case in which one or more special circumstances … has been found to be true …, who was 16 years of age or older and under the age of 18 years at the time of the commission of the crime, shall be confinement in the state prison for life without the possibility of parole or, at the discretion of the court, 25 years to life."

13.

The California Supreme Court recently disapproved the cases relied on by defendant. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1370, 1387.) Leaving aside constitutional questions raised by establishing a presumption in favor of life without parole for juveniles after the United States Supreme Court's opinion in *Miller v. Alabama* (2012) 567 U.S. ___ [132 S.Ct. 2455], the state high court's review of the text of section 190.5, subdivision (b) led it to conclude the syntax is ambiguous concerning any presumption. The court stated: "It is not unreasonable to read this text … to mean that a court 'shall' impose life without parole unless 'at the discretion of the court' a sentence of 25 years to life appears more appropriate. [Citation.] But it is equally reasonable to read the text to mean that a court may select one of the two penalties in the exercise of its discretion, with no presumption in favor of one or the other. The latter reading accords with common usage. For example, if a teacher informed her students that 'you must take a final exam or, at your discretion, write a term paper,' it would be reasonable for the students to believe they were equally free to pursue either option. The text of section 190.5[, subdivision ](b) does not clearly indicate whether the statute was intended to make life without parole the presumptive sentence." (*People v. Gutierrez*, *supra*, 58 Cal.4th at p. 1371.)

The same example can be applied to the syntax of section 1170.126, subdivision (f). Thus, we do not agree with defendant that resentencing to a second strike term is the generally mandatory disposition, subject only to circumscribed discretion to retain the indeterminate third strike term. A court considering whether to resentence an eligible petitioner under section 1170.126, subdivision (f) has circumscribed discretion in the sense it can only refuse to resentence if it finds that to do so would pose an unreasonable risk of danger to public safety on the facts of the particular case before it. This does not mean, however, its discretion is circumscribed in the sense it can only find dangerousness in rare or extraordinary cases. To the contrary, it can do so in any case in which such a finding is rational under the totality of the circumstances.

14.

Such a conclusion comports with the plain language of the statute. Moreover, reading subdivision (f) of section 1170.126 to somehow limit a trial court's discretion, rather than focusing it on the question of dangerousness, would run directly contrary to the intent of the voters in passing the Act. (See *People v. Gutierrez, supra*, 58 Cal.4th at pp. 1371-1372 [examining legislative history and voter intent in attempt to resolve statutory ambiguity].) As we stated in *People v. Osuna* (2014) 225 Cal.App.4th 1020, 1036, "'[e]nhancing public safety was a key purpose of the Act' [citation]." Thus, although one purpose of the Act was to save taxpayer dollars (*People v. Osuna, supra*, at p. 1037), "[i]t is clear the electorate's intent was not to throw open the prison doors to *all* third strike offenders whose current convictions were not for serious or violent felonies, but *only* to those who were perceived as nondangerous or posing little or no risk to the public." (*Id*. at p. 1038, second italics added.) Had voters intended to permit retention of an indeterminate term only in rare or extraordinary cases, they would have said so in subdivision (f) of section 1170.126, rather than employing language that affords a court broad discretion to find dangerousness. They also would not have afforded a court the power to consider any evidence it determined to be relevant to the issue as they did in subdivision (g)(3) of the statute.

The foregoing essentially answers defendant's analogizing of the resentencing procedure under the Act to the striking of prior serious and/or violent felony allegations under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*). In *Romero*, the California Supreme Court held that trial courts retain discretion to strike, in furtherance of justice under section 1385, subdivision (a), prior felony conviction allegations in cases brought under the three strikes law. (*Romero, supra*, at pp. 529-530.) The court subsequently clarified, however, that in deciding whether to do so, or reviewing such a ruling, "the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the

15.

defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams*, *supra*, 17 Cal.4th at p. 161.)

Because the three strikes law was intended to restrict courts' discretion in sentencing repeat offenders, the state high court determined there were "stringent standards" sentencing courts must follow in order to find a defendant should be treated as falling outside the three strikes scheme. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.) The court explained:

> "[T]he three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper.

> "In light of this presumption, a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation]. Moreover, 'the sentencing norms [established by the Three Strikes law may, as a matter of law,] produce[] an "arbitrary, capricious or patently absurd" result' under the specific facts of a particular case. [Citation.]

> "But '[i]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations. [Citation.] … Because the circumstances must be 'extraordinary … by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 378.)

As we explained in *Blakely*, *supra*, 225 Cal.App.4th at page 1054, "The purpose of the three strikes law has been variously stated as being '"to ensure longer prison sentences and greater punishment for those who commit a felony and have been

previously convicted of serious and/or violent felony offenses'" [citation] and 'to promote the state's compelling interest in the protection of public safety and in punishing recidivism' [citation]. Although the Act 'diluted' the three strikes law somewhat [citation], '[e]nhancing public safety was a key purpose of the Act' [citation]." Because public safety remains a key purpose of the law under the Act, it is too simplistic essentially to pass off a section 1170.126 proceeding as the converse of a *Romero* determination, or to say resentencing "should be the routine exercise of sentencing discretion when a prisoner is eligible."

> "The standard of proof, the United States Supreme Court has said, 'serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.' [Citation.] At one end of the spectrum is the 'preponderance of the evidence' standard, which apportions the risk of error among litigants in roughly equal fashion. [Citation.] At the other end of the spectrum is the 'beyond a reasonable doubt' standard applied in criminal cases, in which 'our society imposes almost the entire risk of error upon itself.' [Citation.] Between those two standards is the intermediate standard of clear and convincing evidence. [Citation.] These three standards are codified in California's Evidence Code. Section 115 of that code states: 'The burden of proof may require a party to … establish the existence or nonexistence of a fact by a preponderance of the evidence, by clear and convincing proof, or by proof beyond a reasonable doubt. [¶] *Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence*.' (Italics added.)

> "If the Legislature has not established a standard of proof, a court must determine the appropriate standard by considering all aspects of the law. [Citation.] No standard of proof is specified in section [1170.126] ….

> "'The standard of proof that is required in a given instance has been said to reflect "… the degree of confidence our society thinks [the fact finder] should have in the correctness of factual conclusions for a particular type of adjudication." … The standard of proof may therefore vary, depending upon the gravity of the consequences that would result from an erroneous determination of the issue involved.' [Citations.]" (*People v. Arriaga* (2014) 58 Cal.4th 950, 961-962.)

17.

"In enacting section 1170.126 as part of Proposition 36, the issue before the voters was not whether a defendant could or should be punished more harshly for a particular aspect of his or her offense, but whether, having already been found to warrant an indeterminate life sentence as a third strike offender, he or she should now be eligible for a lesser term." (*People v. Osuna*, *supra*, 225 Cal.App.4th at p. 1036.) Although voters could have permitted automatic resentencing, under any and all circumstances, of those eligible therefor, they did not do so. This demonstrates a recognition of two highly plausible scenarios: (1) Some inmates sentenced to indeterminate terms under the original version of the three strikes law for crimes not defined as serious or violent felonies may have started out not posing any greater risk of danger than recidivists who will now be sentenced to determinate terms as second strike offenders under the prospective provisions of the Act, but have become violent or otherwise dangerous while imprisoned, or (2) Enough time might have passed since some inmates committed their criminal offenses so that those offenses no longer make such inmates dangerous, but other factors do. Because of the severe consequences to society that may result if a dangerous inmate is resentenced as a second strike offender and automatically released to the community upon completion of his or her term with little or no supervision (see, e.g., § 3451) and without undergoing any suitability assessment (see, e.g., *In re Lawrence* (2008) 44 Cal.4th 1181, 1204), we believe it appropriate to apportion the risk of error in roughly equal fashion.

Defendant understandably argues his freedom for the rest of his life potentially is at stake in a proceeding under section 1170.126. Thus, he says, his interest in the outcome is just as great as that of people who, for example, are involuntarily committed as narcotics addicts. In such instances (and in similar situations), the California Supreme Court has found the appropriate standard of proof to be beyond a reasonable doubt. (See, e.g., *People v. Thomas* (1977) 19 Cal.3d 630, 637-638.) Defendant received the protections of that standard of proof (and the right to a jury trial) at the time he was found

to have suffered his prior strike convictions, however.  (*People v. Nguyen* (2009) 46 Cal.4th 1007, 1015; *People v. Towers* (2007) 150 Cal.App.4th 1273, 1277.)**9**

**B.**

Defendant argues "equal protection requires the application of the same standard for recalled sentences as defendants who are currently being sentenced."  (Some capitalization omitted.)  We reject his claim.

"The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally.  [Citation.] Accordingly, '"[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner."'  [Citation.]  'This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged."'  [Citation.]"  (*People v. Brown* (2012) 54 Cal.4th 314, 328; accord, *People v. Wutzke* (2002) 28 Cal.4th 923, 943.)

We cannot tell whether defendant is saying he is similarly situated to persons who are being newly sentenced for their current offenses under the three strikes law as amended by the Act, in which case there are constitutional and statutory pleading and proof requirements (§§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C); *Apprendi*, *supra*, 530 U.S. 466); or persons who complete their prison terms but are then subject to further commitment as mentally disordered offenders (§ 2962 et seq.), sexually violent predators (Welf. & Inst. Code, § 6600 et seq.), or under the juvenile extended detention scheme (*id*., § 1800 et seq.).  It does not matter, because defendant is not similarly situated to any

---

**9**     We are not persuaded by defendant's alternate claim that due process requires at least a standard of clear and convincing evidence.  The cases on which defendant bases this assertion (*U.S. v. Pineda-Doval* (9th Cir. 2010) 614 F.3d 1019, 1041; *U.S. v. Jordan* (9th Cir. 2001) 256 F.3d 922, 930) do not address situations analogous to the act of voter lenity contained in section 1170.126.

of those persons. (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1306; see *People v. Wutzke*, *supra*, 28 Cal.4th at p. 944.) Defendant is not merely entering the prison system; rather, he has been confined there for a substantial period of time. Nor is he someone who has completed his sentence and now is being subjected to additional confinement. "Instead, [defendant] *was properly sentenced* to prison for an indefinite term because he was *properly convicted* (beyond a reasonable doubt, by a unanimous jury) of a third felony after he had committed two prior serious or violent felonies. It was his third felony conviction which, pursuant to the law in effect at the time, subjected him to an indeterminate sentence. Now, due to the adoption of the Act, [defendant] may be entitled to a downward modification of this indeterminate term to a determinate second strike sentence. That he may be denied such downward modification due to a finding of dangerousness based on a preponderance of the evidence does not mean that he would be subjected to indefinite confinement based on this finding. He is subject to the indeterminate term due to his original third strike sentence; the dangerousness finding would simply deny him a downward modification. This process does not deny [defendant] his constitutional right to equal protection of the law." (*Kaulick*, *supra*, at p. 1306, fn. omitted.)

## C.*

We hold preponderance of the evidence is the applicable standard of proof, regardless whether we analyze the issue as one of Sixth Amendment jurisprudence, due process, or equal protection. (See *People v. Flores* (2014) 227 Cal.App.4th 1070, 1076.) This does not, however, mean the trial court must apply that standard in making its ultimate determination whether to resentence a petitioner, or we must review that

---

\* See footnote, *ante*, page 1.

20.

determination for substantial evidence.[10] Nor does it mean evidence of dangerousness must preponderate over evidence of rehabilitation for resentencing to be denied. Instead, considering the language of subdivisions (f) and (g) of section 1170.126, we conclude it means the People have the burden of establishing, by a preponderance of the evidence, facts from which a determination resentencing the petitioner would pose an unreasonable risk of danger to public safety can reasonably be made.[11] Stated another way, evidence showing a petitioner poses a risk of danger to public safety must be proven by the People by a preponderance. The reasons a trial court finds resentencing would pose an unreasonable risk of danger, or its weighing of evidence showing dangerousness versus evidence showing rehabilitation, lie within the court's discretion. The ultimate determination that resentencing would pose an unreasonable risk of danger is a discretionary one. While the determination must be supported by record evidence established by a preponderance, the trial court need not itself find an unreasonable risk of danger by a preponderance of the evidence. (See *In re Robert L.*, *supra*, 21 Cal.App.4th at pp. 1065-1067 [discussing abuse of discretion and preponderance of the evidence standards].)

---

**10**     The substantial evidence test applies to an appellate court's review of findings made under the preponderance of the evidence standard. (*People v. Wong* (2010) 186 Cal.App.4th 1433, 1444.) Under that test, the appellate court reviews the record in the light most favorable to the challenged finding, to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could make the finding by a preponderance of the evidence. The appellate court "resolve[s] all conflicts in the evidence and questions of credibility in favor of the [finding], and … indulge[s] every reasonable inference the [trier of fact] could draw from the evidence. [Citation.]" (*Ibid.*)

**11**     Courts and parties have assumed whatever burden exists is on the People. (E.g., *People v. Flores*, *supra*, 227 Cal.App.4th at pp. 1075-1076; *Kaulick*, *supra*, 215 Cal.App.4th at p. 1301, fn. 25.) Such allocation is in harmony with the language of section 1170.126, subdivision (f) that an eligible petitioner "shall be resentenced … unless" the court makes the required determination.

Such an interpretation is consistent with California's noncapital sentencing scheme.[12] Under the determinate sentencing law (DSL) as it existed prior to *Cunningham*, "three terms of imprisonment [were] specified by statute for most offenses. The trial court's discretion in selecting among [those] options [was] limited by section 1170, subdivision (b), which direct[ed] that 'the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime.'" (*People v. Black* (2007) 41 Cal.4th 799, 808, fn. omitted.) Trial courts had "broad discretion" to impose the lower or upper term instead of the middle term of imprisonment (*People v. Scott* (1994) 9 Cal.4th 331, 349), and generally were required by the statutes and sentencing rules to state reasons for their discretionary sentencing choices (*ibid*.). Such reasons had to be "supported by a preponderance of the evidence in the record" and reasonably related to the particular sentencing determination. (*Ibid*.; see former Cal. Rules of Court, rule 4.420(b).) Even after the DSL was reformed and amended in response to *Cunningham*, so as to eliminate judicial factfinding in selection of the appropriate term when three possible prison terms are specified by statute, establishment of facts by a preponderance of the evidence remains necessary with respect to certain discretionary sentencing decisions. (See *In re Coley* (2012) 55 Cal.4th 524, 557-558.)[13]

---

[12] The determination of the appropriate penalty in a capital case "'is "essentially moral and normative …, and therefore … there is no burden of proof or burden of persuasion. [Citation.]" [Citation.]' [Citations.]" (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1362.)

[13] After *Cunningham* concluded the DSL violated a defendant's Sixth Amendment right to a jury trial (*Cunningham*, *supra*, 549 U.S. at p. 281), the Legislature amended section 1170 so that now "(1) the middle term is no longer the presumptive term absent aggravating or mitigating facts found by the trial judge; and (2) a trial judge has the discretion to impose an upper, middle or lower term based on reasons he or she states." (*People v. Wilson* (2008) 164 Cal.App.4th 988, 992.) Subdivision (b) of section 1170 states the court "shall select the term which, in the court's discretion, best serves the interests of justice."

22.

In *People v. Sandoval* (2007) 41 Cal.4th 825, 850-851, the California Supreme Court stated that, in making its discretionary sentencing choices post-*Cunningham*, "the trial court need only 'state [its] reasons' [citation]; it is not required to identify aggravating and mitigating factors, *apply a preponderance of the evidence standard*, or specify the 'ultimate facts' that 'justify[] the term selected.' [Citations.] Rather, the court must 'state in simple language the primary factor or factors that support the exercise of discretion.' [Citation.]" (Italics added.)

The trial court's ultimate determination when considering a petition for resentencing under section 1170.126 is analogous to an evaluation of the relative weight of mitigating and aggravating circumstances. Such an evaluation "is not equivalent to a factual finding." (*People v. Black*, *supra*, 41 Cal.4th at p. 814, fn. 4.) It follows, then, that the trial court need not apply a preponderance of the evidence standard, in that it need not find resentencing the petitioner would, more likely than not, pose an unreasonable risk of danger to public safety. (See *Kaulick*, *supra*, 215 Cal.App.4th at p. 1305, fn. 28 [preponderance standard means "'more likely than not'"].)

*Kaulick* found the prosecution bears the burden of establishing "dangerousness" by a preponderance of the evidence against a claim the *Apprendi* line of cases requires proof beyond a reasonable doubt. (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1301-1302.) As a result, it had no real occasion to address the interplay between the burden of proof and the trial court's exercise of discretion as that issue is presented here, or to clarify whether the prosecution is required to establish "dangerousness" in the sense of *facts* upon which the trial court can base the ultimate determination resentencing a petitioner would pose an unreasonable risk of danger to public safety, or in the sense of establishing that determination itself.[14] Nevertheless, we believe it supports our interpretation. As

---

[14]    As noted, *ante*, we have previously discussed *Kaulick* in the context of the initial determination whether an inmate is eligible for resentencing under the Act. (*Blakely*, *supra*, 225 Cal.App.4th at pp. 1058, 1060-1061; *People v. Osuna*, *supra*, 225 Cal.App.4th

previously set out, *Kaulick* stated, in part: "The maximum sentence to which Kaulick, and those similarly situated to him, is subject was, and shall always be, the indeterminate life term to which he was originally sentenced. While [the Act] presents him with an opportunity to be resentenced to a lesser term, *unless certain facts are established*, he is nonetheless still subject to the third strike sentence based on the facts established at the time he was originally sentenced. As such, *a court's discretionary decision to decline to modify the sentence in his favor can be based on any otherwise appropriate factor (i.e., dangerousness), and such factor need not be established by proof beyond a reasonable doubt to a jury.*" (*Id.* at p. 1303, italics added.) The court further stated: "[I]t is the general rule in California that once a defendant is eligible for an increased penalty, the trial court, *in exercising its discretion* to impose that penalty, may rely on *factors established by a preponderance of the evidence.* [Citation.]" (*Id.* at p. 1305, italics added.)

To summarize, a trial court need not determine, by a preponderance of the evidence, that resentencing a petitioner would pose an unreasonable risk of danger to public safety before it can properly deny a petition for resentencing under the Act. Nor is the court's ultimate determination subject to substantial evidence review. Rather, its finding will be upheld if it does not constitute an abuse of discretion, i.e., if it falls within "the bounds of reason, all of the circumstances being considered. [Citations.]" (*People v. Giminez* (1975) 14 Cal.3d 68, 72.) The facts or evidence upon which the court's finding of unreasonable risk is based must be proven by the People by a preponderance of the evidence, however, and are themselves subject to our review for substantial evidence. If a factor (for example, that the petitioner recently committed a battery, is violent due to

at pp. 1033, 1039-1040.) Nothing we say here should be taken as disagreement with or modification of those opinions. We deal here with a different aspect of the retrospective portion of the Act and a subject not before us in our prior cases.

24.

repeated instances of mutual combat, etc.) is not established by a preponderance of the evidence, it cannot form the basis for a finding of unreasonable risk.  (See *People v. Cluff* (2001) 87 Cal.App.4th 991, 998 [trial court abuses its discretion when factual findings critical to decision find no support in record]; cf. *People v. Read* (1990) 221 Cal.App.3d 685, 689-691 [where trial court erroneously determined defendant was statutorily ineligible for probation, reviewing court was required to determine whether trial court gave sufficient other reasons, supported by facts of case, for probation denial].)

## II[*]

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY DENYING DEFENDANT'S PETITION.

Defendant says the trial court erred by denying his petition under section 1170.126, subdivision (f).  He argues that application of the criteria contained in subdivision (g) of the statute to the facts of this case requires resentencing, and there is no substantial evidence to support the court's finding resentencing defendant would pose an unreasonable risk of current dangerousness to public safety.

We have set out the evidence presented to the court and its comments and ruling at length, *ante*, and need not repeat them here.  The People met their burden of proving, by a preponderance of the evidence, facts from which the trial court reasonably could find resentencing defendant would pose an unreasonable risk of danger to public safety.  The trial court gave due consideration to all the information before it, and so determined.  In light of defendant's criminal and institutional disciplinary records, the trial court's ruling fell within the bounds of reason, even given defendant's commendable efforts at rehabilitation.

---

[*]      See footnote, *ante*, page 1.

25.

# III[*]

## SECTION 1170.18, SUBDIVISION (C), ENACTED PURSUANT TO PROPOSITION 47, DOES NOT MODIFY SECTION 1170.126, SUBDIVISION (F).

On November 4, 2014, voters enacted Proposition 47, "the Safe Neighborhoods and Schools Act" (hereafter Proposition 47). It went into effect the next day. (Cal. Const., art. II, § 10, subd. (a).) Insofar as is pertinent here, Proposition 47 renders misdemeanors certain drug- and theft-related offenses that previously were felonies or "wobblers," unless they were committed by certain ineligible defendants. Proposition 47 also created a new resentencing provision — section 1170.18 — by which a person currently serving a felony sentence for an offense that is now a misdemeanor, may petition for a recall of that sentence and request resentencing in accordance with the offense statutes as added or amended by Proposition 47. (§ 1170.18, subd. (a).) A person who satisfies the criteria in subdivision (a) of section 1170.18 shall have his or her sentence recalled and be "resentenced to a misdemeanor … unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (*Id*., subd. (b).)[15]

Hidden in the lengthy, fairly abstruse text of the proposed law, as presented in the official ballot pamphlet — and nowhere called to voters' attention — is the provision at issue in the present appeal. Subdivision (c) of section 1170.18 provides: "As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667."

---

[*]     See footnote, *ante*, page 1.

[15]     Proposition 47 also created a process whereby eligible persons who have already completed their sentences may have the particular conviction or convictions designated as misdemeanors. (§ 1170.18, subds. (f), (g).)

Section 667, subdivision (e)(2)(C)(iv) lists the following felonies, sometimes called "super strike" offenses:

> "(I) A 'sexually violent offense' as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code.

> "(II) Oral copulation with a child who is under 14 years of age, and who is more than 10 years younger than he or she as defined by Section 288a, sodomy with another person who is under 14 years of age and more than 10 years younger than he or she as defined by Section 286, or sexual penetration with another person who is under 14 years of age, and who is more than 10 years younger than he or she, as defined by Section 289.

> "(III) A lewd or lascivious act involving a child under 14 years of age, in violation of Section 288.

> "(IV) Any homicide offense, including any attempted homicide offense, defined in Sections 187 to 191.5, inclusive.

> "(V) Solicitation to commit murder as defined in Section 653f.

> "(VI) Assault with a machine gun on a peace officer or firefighter, as defined in paragraph (3) of subdivision (d) of Section 245.

> "(VII) Possession of a weapon of mass destruction, as defined in paragraph (1) of subdivision (a) of Section 11418.

> "(VIII) Any serious and/or violent felony offense punishable in California by life imprisonment or death."

The question is whether section 1170.18, subdivision (c) now limits a trial court's discretion to deny resentencing under the Act to those cases in which resentencing the defendant would pose an unreasonable risk he or she will commit a new "super strike" offense. Defendant says it does. The People disagree. We agree with the People.[16]

---

[16]    We solicited supplemental briefing concerning Proposition 47. Among the questions we asked counsel to answer were whether defendant met the criteria for resentencing under section 1170.18 and, if so, whether we needed to determine the applicability, if any, of section 1170.18, subdivision (c) to resentencing proceedings under section 1170.126. We are satisfied it is appropriate for us to reach the issue of

27.

"'In interpreting a voter initiative …, we apply the same principles that govern statutory construction. [Citation.]' [Citation.] '"The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.]"' [Citation.]" (*People v. Superior Court* (*Cervantes*) (2014) 225 Cal.App.4th 1007, 1014.) Thus, in the case of a provision adopted by the voters, "their intent governs. [Citations.]" (*People v. Jones* (1993) 5 Cal.4th 1142, 1146.)

To determine intent, "'we look first to the words themselves. [Citations.]'" (*People v. Superior Court* (*Cervantes*), *supra*, 225 Cal.App.4th at p. 1014.) We give the

applicability regardless of whether defendant might obtain resentencing under Proposition 47.

It appears that a number of inmates will be eligible to seek resentencing under both the Act and Proposition 47. Such an inmate need not wait to file a petition under Proposition 47 until the trial court's ruling on the inmate's petition under the Act is final. A trial court is not divested of jurisdiction over a Proposition 47 petition by the fact a petition under the Act is pending, whether in a trial court or a Court of Appeal, with respect to the same inmate. (Cf. *People v. Mayfield* (1993) 5 Cal.4th 220, 222-227; *People v. Johnson* (1992) 3 Cal.4th 1183, 1256-1257; *People v. Alanis* (2008) 158 Cal.App.4th 1467, 1472-1473.) While the general rule is that "an appeal from an order in a criminal case removes the subject matter of that order from the jurisdiction of the trial court [citations]" (*Anderson v. Superior Court* (1967) 66 Cal.2d 863, 865), the subject matter of a ruling on a petition under the Act is legally independent from a petition under Proposition 47 (see *People v. Superior Court* (*Gregory*) (2005) 129 Cal.App.4th 324, 332).

In light of the differences between the two proceedings — for instance, an inmate resentenced under Proposition 47 is generally subject to one year of parole (§§ 1170.18, subd. (d), 3000.08), while an inmate resentenced under the Act is subject to up to three years of postrelease community supervision (§ 3451; *People v. Tubbs* (2014) 230 Cal.App.4th 578, 585-586, petn. for review pending, petn. filed Nov. 12, 2014, time for grant or denial of review extended to Feb. 10, 2015; *People v. Espinoza* (2014) 226 Cal.App.4th 635, 637-638) — we express no opinion concerning whether the granting of a Proposition 47 petition would render moot resentencing proceedings, whether in a trial court or on appeal, under the Act. Nothing we say should be read as expressing any opinion concerning the appropriate result should defendant seek resentencing under Proposition 47.

28.

statute's words "'a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language "in isolation." [Citation.] Rather, we look to "the entire substance of the statute … in order to determine the scope and purpose of the provision …. [Citation.]" [Citation.] That is, we construe the words in question "'in context, keeping in mind the nature and obvious purpose of the statute ….' [Citation.]" [Citation.] We must harmonize "the various parts of a statutory enactment … by considering the particular clause or section in the context of the statutory framework as a whole." [Citations.]' [Citation.]" (*People v. Acosta* (2002) 29 Cal.4th 105, 112.) We "accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided.… [S]tatutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.]" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.)

"'"'When statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it." [Citation.]' [Citation.]" (*People v. Hendrix* (1997) 16 Cal.4th 508, 512.) On its face, "[a]s used throughout this Code," as employed in section 1170.18, subdivision (c), clearly and unambiguously refers to the Penal Code, not merely section 1170.18 or the other provisions contained in Proposition 47. (See *People v. Bucchierre* (1943) 57 Cal.App.2d 153, 164-165, 166; see also *Marshall v. Pasadena Unified School Dist.* (2004) 119 Cal.App.4th 1241, 1254-1255; *People v. Vasquez* (1992) 7 Cal.App.4th 763, 766.)

This does not mean, however, that the definition contained in section 1170.18, subdivision (c) must inexorably be read into section 1170.126, subdivision (f). (Cf. *Marshall v. Pasadena Unified School Dist.*, *supra*, 119 Cal.App.4th at p. 1255.) "The literal language of a statute does not prevail if it conflicts with the lawmakers' intent …. [Citations.]" (*People v. Osuna*, *supra*, 225 Cal.App.4th at pp. 1033-1034.) "'The apparent purpose of a statute will not be sacrificed to a literal construction.' [Citation.]"

(*Cossack v. City of Los Angeles* (1974) 11 Cal.3d 726, 733.) Rather, "the literal meaning of a statute must be in accord with its purpose." (*People v. Mohammed* (2008) 162 Cal.App.4th 920, 927.) "[I]t is settled that the language of a statute should not be given a literal meaning if doing so would result in absurd consequences that the [voters] did not intend" (*In re Michele D.* (2002) 29 Cal.4th 600, 606), or would "frustrate[] the manifest purposes of the legislation as a whole …." (*People v. Williams* (1992) 10 Cal.App.4th 1389, 1393.) "To this extent, therefore, intent prevails over the letter of the law and the letter will be read in accordance with the spirit of the enactment. [Citation.]" (*In re Michele D.*, *supra*, 29 Cal.4th at p. 606; accord, *People v. Ledesma* (1997) 16 Cal.4th 90, 95.)

Thus, "'we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]' [Citation.] We also '"refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet." [Citation.]' [Citation.]" (*People v. Osuna*, *supra*, 225 Cal.App.4th at p. 1034.) We consider "the consequences that will flow from a particular interpretation" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.*, *supra*, 43 Cal.3d at p. 1387), as well as "the wider historical circumstances" of the statute's or statutes' enactment (*ibid*.). "'Using these extrinsic aids, we "select the construction that comports most closely with the apparent intent of the [electorate], with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' [Citation.]" (*People v. Osuna*, *supra*, 225 Cal.App.4th at pp. 1034-1035.)

Proposition 47 and the Act address related, but not identical, subjects. As we explain, reading them together, and considering section 1170.18, subdivision (c) in the context of the statutory framework as a whole (see *People v. Acosta*, *supra*, 29 Cal.4th at

30.

p. 112; *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 658-659; *In re Cindy B.* (1987) 192 Cal.App.3d 771, 781), we conclude its literal meaning does not comport with the purpose of the Act, and applying it to resentencing proceedings under the Act would frustrate, rather than promote, that purpose and the intent of the electorate in enacting both initiative measures (see *People v. Disibio* (1992) 7 Cal.App.4th Supp. 1, 5).

As is evidenced by its title, the Act was aimed solely at revising the three strikes law. That law, as originally enacted by the Legislature, was described by us as follows:

> "Under the three strikes law, defendants are punished not just for their current offense but for their recidivism. Recidivism in the commission of multiple felonies poses a danger to society justifying the imposition of longer sentences for subsequent offenses. [Citation.] The primary goals of recidivist statutes are: '… to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes. Like the line dividing felony theft from petty larceny, the point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction.' [Citation.]
>
> "By enacting the three strikes law, the Legislature acknowledged the will of Californians that the goals of retribution, deterrence, and incapacitation be given precedence in determining the appropriate punishment for crimes. Further, those goals were best achieved by ensuring 'longer prison sentences and greater punishment' for second and third 'strikers.'" (*People v. Cooper* (1996) 43 Cal.App.4th 815, 823-824.)[17]

---

[17] The foregoing applies equally to the three strikes initiative measure that added section 1170.12 to the Penal Code. The following statement of intent preceded the text of the statute in Proposition 184, which was approved by voters on November 8, 1994: "'It is the intent of the People of the State of California in enacting this measure to ensure longer prison sentences and greater punishment for those who commit a felony and have

31.

A few months before the November 6, 2012, election, the California Supreme Court observed: "One aspect of the [three strikes] law that has proven controversial is that the lengthy punishment prescribed by the law may be imposed not only when … a defendant [who has previously been convicted of one or more serious or violent felonies] is convicted of another serious or violent felony but also when he or she is convicted of any offense that is categorized under California law as a felony. This is so even when the current, so-called triggering, offense is nonviolent and may be widely perceived as relatively minor. [Citations.]" (*In re Coley*, *supra*, 55 Cal.4th at pp. 528-529.)

Clearly, by approving the Act, voters resolved this controversy in favor of strike offenders. Thus, one of the "Findings and Declarations" of the Act stated the Act would "[r]estore the Three Strikes law to the public's original understanding by requiring life sentences only when a defendant's current conviction is for a violent or serious crime." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) text of proposed law, § 1, p. 105.) Nowhere, however, do the ballot materials for the Act suggest voters intended essentially to open the prison doors to existing third strike offenders in all but the most egregious cases, as would be the result if the definition of "'unreasonable risk of danger to public safety'" contained in section 1170.18, subdivision (c) were engrafted onto resentencing proceedings under section 1170.126, subdivision (f). That voters did *not* intend such a result is amply demonstrated by the fact an indeterminate life term remains mandatory under the Act for a wide range of current offenses even if the offender does not have a prior conviction for a "super strike" offense (§§ 667, subd. (e)(2), 1170.12, subd. (c)(2)), and that an inmate is rendered ineligible for resentencing under section 1170.126 for an array of reasons beyond his or her having suffered such a prior conviction (§ 1170.126, subd. (e)(2)).

been previously convicted of serious and/or violent felony offenses.'" (See Historical and Statutory Notes, 50C West's Ann. Pen. Code (2004 ed.) foll. § 1170.12, p. 239.)

The Act clearly placed public safety above the cost savings likely to accrue as a result of its enactment. Thus, uncodified section 7 of the Act provides: "This act is an exercise of the public power of the people of the State of California *for the protection of the health, safety, and welfare of the people of the State of California*, and shall be liberally construed to effectuate those purposes." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012), *supra*, text of proposed law, p. 110, original italics omitted, italics added.) As we explained in *People v. Osuna*, *supra*, 225 Cal.App.4th at page 1036, "Although the Act 'diluted' the three strikes law somewhat [citation], '[e]nhancing public safety was a key purpose of the Act' [citation]."

In contrast, Proposition 47 — while titled "the Safe Neighborhoods and Schools Act" — emphasized monetary savings. The "Findings and Declarations" state: "The people of the State of California find and declare as follows: [¶] The people enact the Safe Neighborhoods and Schools Act to ensure that prison spending is focused on violent and serious offenses, to maximize alternatives for nonserious, nonviolent crime, and to invest the savings generated from this act into prevention and support programs in K-12 schools, victim services, and mental health and drug treatment. This act ensures that sentences for people convicted of dangerous crimes like rape, murder, and child molestation are not changed." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of proposed law, § 2, p. 70.) Uncodified section 15 of the measure provides: "This act shall be broadly construed to accomplish its purposes," while uncodified section 18 states: "This act shall be liberally construed to effectuate its purposes." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, text of proposed law, p. 74.) Proposition 47 requires misdemeanor sentences for various drug possession and property offenses, unless the perpetrator has a prior conviction for a "super strike" offense or for an offense requiring sex offender registration pursuant to section 290, subdivision (c). (Health & Saf. Code, §§ 11350, subd. (a), 11357, subd. (a), 11377, subd. (a); §§ 459.5, subd. (a), 473, subd. (b), 476a, subd. (b), 490.2, subd. (a), 496, subd. (a), 666, subd. (b).)

33.

Section 1170.18 renders ineligible for resentencing *only* those inmates whose current offense would now be a misdemeanor, but who have a prior conviction for a "super strike" offense or for an offense requiring sex offender registration pursuant to section 290, subdivision (c). (§ 1170.18, subds. (a), (i).)

Nowhere in the ballot materials for Proposition 47 were voters given any indication that initiative, which dealt with offenders whose current convictions would now be misdemeanors rather than felonies, had any impact on the Act, which dealt with offenders whose current convictions *would still be felonies*, albeit not third strikes. For instance, the Official Title and Summary stated, in pertinent part, that Proposition 47 would "[r]equire[] resentencing for persons serving felony sentences for these offenses[, i.e., offenses that require misdemeanor sentences under the measure] unless court finds unreasonable public safety risk." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, official title and summary, p. 34.) In explaining what Proposition 47 would do, the Legislative Analyst stated: "This measure reduces penalties for certain offenders convicted of *nonserious and nonviolent property and drug crimes*. This measure also allows certain offenders *who have been previously convicted of such crimes* to apply for reduced sentences." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, analysis of Prop. 47 by Legis. Analyst, p. 35, italics added.) With respect to the resentencing provision, the Legislative Analyst explained:

> "This measure allows offenders *currently serving felony sentences for the above crimes*[, i.e., grand theft, shoplifting, receiving stolen property, writing bad checks, check forgery, and drug possession] to apply to have their felony sentences reduced to misdemeanor sentences. In addition, certain offenders who have already completed a sentence for a felony that the measure changes could apply to the court to have their felony conviction changed to a misdemeanor. However, no offender who has committed a specified severe crime could be resentenced or have their conviction changed. In addition, the measure states that a court is not required to resentence an offender currently serving a felony sentence if the court finds it likely that the offender will commit a specified severe crime. Offenders who are resentenced would be required to be on state parole for

one year, unless the judge chooses to remove that requirement." (*Id*. at p. 36, italics added.)

Similarly, the arguments in favor of and against Proposition 47 spoke in terms solely of Proposition 47, and never mentioned the Act. The Argument in Favor of Proposition 47 spoke in terms of prioritizing serious and violent crime so as to stop wasting prison space "on petty crimes," stop "wasting money on warehousing people in prisons for nonviolent petty crimes," and stop California's overcrowded prisons from "incarcerating too many people convicted of low-level, nonviolent offenses." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, argument in favor of Prop. 47, p. 38.) The Rebuttal to Argument Against Proposition 47 reiterated these themes, and never suggested Proposition 47 would have any effect on resentencing under the Act. (See Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, rebuttal to argument against Prop. 47, p. 39.) Although the Rebuttal to Argument in Favor of Proposition 47 asserted 10,000 inmates would be eligible for early release under the measure, and that many of them had prior convictions "for serious crimes, such as assault, robbery and home burglary" (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, rebuttal to argument in favor of Prop. 47, p. 38), there is no suggestion the early release provisions would extend to inmates whose current offenses remained felonies under the Act. The same is true of the discussion of resentencing contained in the Argument Against Proposition 47. (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, argument against Prop. 47, p. 39.)

In light of the foregoing, we cannot reasonably conclude voters intended the definition of "'unreasonable risk of danger to public safety'" contained in section 1170.18, subdivision (c) to apply to that phrase as it appears in section 1170.126, subdivision (f), despite the former section's preamble, "As used throughout this Code …." Voters cannot intend something of which they are unaware.

We are cognizant one of the Act's authors has taken the position Proposition 47's definition of "unreasonable risk of danger" applies to resentencing proceedings under the Act. (St. John & Gerber, *Prop. 47 Jolts Landscape of California Justice System* (Nov. 5, 2014) Los Angeles Times <http://www.latimes.com/local/politics/la-me-ff-pol-proposition47-20141106-story.html> [as of Dec. 18, 2014].) Looking at the information conveyed to voters, however, this clearly was not *their* intent and so an author's desire is of no import. (Cf. *People v. Garcia* (2002) 28 Cal.4th 1166, 1175-1176, fn. 5; *People v. Bradley* (2012) 208 Cal.App.4th 64, 83; *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 30.)

We are also mindful "it has long been settled that '[t]he enacting body is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted' [citation], 'and to have enacted or amended a statute in light thereof' [citation]. 'This principle applies to legislation enacted by initiative. [Citation.]' [Citation.]" (*People v. Superior Court* (*Cervantes*), *supra*, 225 Cal.App.4th at p. 1015; accord, *In re Lance W.* (1985) 37 Cal.3d 873, 890, fn. 11.) Thus, we presume voters were aware "unreasonable risk of danger to public safety," as used in section 1170.126, subdivision (f), had been judicially construed as not being impermissibly vague, but as nevertheless having no fixed definition. (*People v. Garcia* (2014) 230 Cal.App.4th 763, 769-770, petn. for review pending, petn. filed Nov. 18, 2014; *People v. Flores*, *supra*, 227 Cal.App.4th at p. 1075.) Because nowhere in the ballot materials for Proposition 47 was it called to voters' attention the definition of the phrase contained in section 1170.18, subdivision (c) would apply to resentencing proceedings under the Act, we simply cannot conclude voters intended Proposition 47 to alter the Act in that respect. Voters are not asked or presumed to be able to discern all potential effects of a proposed initiative measure; this is why they are provided with voter information guides containing not only the actual text of such a measure, but also a neutral explanation and analysis by the Legislative Analyst and arguments in support of and in opposition to the measure. As we

36.

have already observed, none of those materials so much as hinted that Proposition 47 could have the slightest effect on resentencing under the Act. (Cf. *Marshall v. Pasadena Unified School Dist.*, *supra*, 119 Cal.App.4th at pp. 1255-1256 [legislative history of enactment included information bill would add definition of particular term to Public Contract Code].)**18**

We are asked to infer an intent to extend section 1170.18, subdivision (c)'s definition to proceedings under section 1170.126 because the phrase in question only appears in those sections of the Penal Code. We cannot do so. The only resentencing mentioned in the Proposition 47 ballot materials was resentencing for inmates whose current offenses would be reduced to *misdemeanors*, not those who would still warrant *second strike felony terms*. There is a huge difference, both legally and in public safety risked, between someone with multiple prior serious and/or violent felony convictions whose current offense is (or would be, if committed today) a misdemeanor, and someone whose current offense is a felony. Accordingly, treating the two groups differently for resentencing purposes does not lead to absurd results, but rather is eminently logical.

We recognize "[i]t is an established rule of statutory construction … that when statutes are *in pari materia* similar phrases appearing in each should be given like meanings. [Citations.]" (*People v. Caudillo* (1978) 21 Cal.3d 562, 585, overruled on another ground in *People v. Martinez* (1999) 20 Cal.4th 225, 229, 237, fn. 6 & disapproved on another ground in *People v. Escobar* (1992) 3 Cal.4th 740, 749-751 & fn. 5; see *Robbins v. Omnibus R. Co.* (1867) 32 Cal. 472, 474.) We question whether Proposition 47 and the Act are truly in pari materia: That phrase means "[o]n the same

---

**18**     For the same reasons, we reject any suggestion the definition contained in section 1170.18, subdivision (c) was intended to clarify the true meaning of "unreasonable risk of danger to public safety" as used in section 1170.126, subdivision (f). (Cf. *Re-Open Rambla, Inc. v. Board of Supervisors* (1995) 39 Cal.App.4th 1499, 1511; *In re Connie M.* (1986) 176 Cal.App.3d 1225, 1238.)

subject; relating to the same matter" (Black's Law Dict. (9th ed. 2009) p. 862), and the two measures (albeit with some overlap) address different levels of offenses and offenders. In any event, "canons of statutory construction are merely aids to ascertaining probable legislative intent" (*Stone v. Superior Court* (1982) 31 Cal.3d 503, 521, fn. 10); they are "mere guides and will not be applied so as to defeat the underlying legislative intent otherwise determined [citation]" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.*, *supra*, 43 Cal.3d at p. 1391).

The Act was intended to reform the three strikes law while keeping intact that scheme's core commitment to public safety. Allowing trial courts broad discretion to determine whether resentencing an eligible petitioner under the Act "would pose an unreasonable risk of danger to public safety" (§ 1170.126, subd. (f)) clearly furthers the Act's purpose. Whatever the wisdom of Proposition 47's policy of near-universal resentencing where *misdemeanants* are concerned — and "[i]t is not for us to gainsay the wisdom of this legislative choice" (*Bernard v. Foley* (2006) 39 Cal.4th 794, 813) — constraining that discretion so that all but the worst *felony* offenders are released manifestly does not, nor does it comport with voters' intent in enacting either measure.

Accordingly, Proposition 47 has no effect on defendant's petition for resentencing under the Act. Defendant is not entitled to a remand so the trial court can redetermine defendant's entitlement to resentencing under the Act utilizing the definition of "'unreasonable risk of danger to public safety'" contained in section 1170.18, subdivision (c).[19]

---

[19]    Recently, the Third District Court of Appeal held section 1170.18, subdivision (c)'s definition of "'unreasonable risk of danger to public safety'" does not apply retroactively to defendants whose petitions for resentencing under the Act were decided before the effective date of Proposition 47. (*People v. Chaney* (Dec. 1, 2014, C073949) ___ Cal.App.4th ___, ___-___ [2014 D.A.R. 15934, 15935-15936].) *Chaney* did not decide whether Proposition 47's definition applies prospectively to such petitions. (*Chaney*, *supra*, at p. ___, fn. 3 [2014 D.A.R. 15934, 15936, fn. 3].) Were we to

# DISPOSITION

The judgment is affirmed.

                                      _____

                                             DETJEN, J.

I CONCUR:


_____

LEVY, Acting P.J.

---

conclude section 1170.18, subdivision (c) modifies section 1170.126, subdivision (f), we would agree with *Chaney* that it does not do so retroactively. We believe, however, that a finding of nonretroactivity inexorably leads to the possibility of prospective-only application, and that prospective-only application of Proposition 47's definition to resentencing petitions under the Act would raise serious, perhaps insurmountable, equal protection issues. "Mindful of the serious constitutional questions that might arise were we to accept a literal construction of the statutory language, and of our obligation wherever possible both to carry out the intent of the electorate and to construe statutes so as to preserve their constitutionality [citations]" (*People v. Skinner* (1985) 39 Cal.3d 765, 769), we rest our holding on the reasoning set out in our opinion, *ante*.

PEÑA, J.,

I concur in the judgment and the majority opinion with the exception of part III.  I agree defendant may not take advantage of Proposition 47's[1] newly enacted definition of "unreasonable risk of danger to public safety," as provided in Penal Code section 1170.18, subdivision (c) (1170.18(c)).  I do so not because there is any ambiguity in the language used in section 1170.18(c) or the notion that the statute does not mean what it says, i.e., that the new definition applies "throughout this Code."  Rather, in my view, there is no indication the electorate, in enacting section 1170.18(c), intended it to apply retroactively to resentencing determinations under Proposition 36, the Three Strikes Reform Act of 2012 (the Act).

I.      **After November 4, 2014, the definition of "unreasonable risk of danger" in Section 1170.18(c) applies throughout the Penal Code**

Section 1170.18(c) provides:  "As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667."

This section and subdivision were enacted on November 4, 2014, when California voters passed Proposition 47, long past the time of defendant's resentencing hearing.  Unless the legislation was designed or intended to apply retroactively, the definition in section 1170.18(c) cannot apply to defendant.  This is the only inquiry we must make to resolve the issue of whether the definition in section 1170.18(c) applies to defendant.  However, the majority has opted to determine whether the new definition applies to any resentencing provisions under the Act, past, present, or future.  I respectfully disagree with the majority's analysis and conclusion on this broader issue.

---

[1]The Safe Neighborhood and Schools Act (Prop. 47, as approved by voters, Gen. Elec. (Nov. 4, 2014)).

"'When construing a statute, we must "ascertain the intent of the Legislature so as to effectuate the purpose of the law."' [Citations.] '[W]e begin with the words of a statute and give these words their ordinary meaning.' [Citation.] 'If the statutory language is clear and unambiguous, then we need go no further.' [Citation.] If, however, the language supports more than one reasonable construction, we may consider 'a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' [Citation.] Using these extrinsic aids, we 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People v. Sinohui* (2002) 28 Cal.4th 205, 211-212.)

Where the statutory language is so clear and unambiguous, there is no need for statutory construction or to resort to legislative materials or other outside sources. (*Quarterman v. Kefauver* (1997) 55 Cal.App.4th 1366, 1371.) Absent ambiguity, it is presumed the voters intend the meaning apparent on the face of an initiative measure, and the courts may not add to the statute or rewrite it to conform to a presumed intent not apparent in its language. (*People v. ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 301.)

In determining whether the words enacted here are unambiguous, we do not write on a blank slate. For example, in *Marshall v. Pasadena Unified School Dist.* (2004) 119 Cal.App.4th 1241, 1255, the court stated there "is nothing ambiguous about the phrase 'as used in this code.'" It held the definition of "Emergency, as used in this code" applied to the entire Public Contract Code, and it was not limited to a particular chapter, article, or division of that code. Also, in *People v. Bucchierre* (1943) 57 Cal.App.2d 153, 166, the court held: "The words 'as in this code provided' (Penal Code, § 182) refer to the Penal Code."

In a similar vein, the court in *People v. Leal* (2004) 33 Cal.4th 999, 1007-1008, applied the plain meaning rule as follows:

2.

"The statutory language of the provision defining 'duress' in each of the rape statutes is clear and unambiguous.  The definition of 'duress' in both the rape and spousal rape statutes begins with the phrase, 'As used in this section, "duress" means ….'  (§§ 261, subd. (b), 262, subd. (c).)  This clear language belies any legislative intent to apply the definitions of 'duress' in the rape and spousal rape statutes to any other sexual offenses.

"Starting from the premise that in 1990 the Legislature incorporated into the rape statute a definition of 'duress' that already was in use for other sexual offenses, defendant argues that the Legislature must have intended its 1993 amendment of the definition of 'duress' in the rape statute, and the incorporation of this new definition into the spousal rape statute, to apply as well to other sexual offenses that use the term 'duress.'  Defendant observes:  'The legislative history does not suggest any rationale for why the Legislature would want its 1993 amendment of the definition of "duress" to apply only to rape so that it would have one meaning when the rape statutes use the phrase "force, violence, duress, menace, or fear of immediate and unlawful bodily injury" but another, much more expansive meaning when the identical phrase is used in the statutes defining sodomy, lewd acts on a child, oral copulation and foreign object rape.'

"But the Legislature was not required to set forth its reasons for providing a different definition of 'duress' for rape and spousal rape than has been used in other sexual offenses; it is clear that it did so.  'When "'statutory language is … clear and unambiguous there is no need for construction, and courts should not indulge in it.'"  [Citations.]  The plain meaning of words in a statute may be disregarded only when that meaning is "'repugnant to the general purview of the act,' or for some other compelling reason …."  [Citations.]'  [Citation.]  As we said in an analogous situation:  'It is our task to construe, not to amend, the statute.  "In the construction of a statute … the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or omit what has been inserted …."  [Citation.]  We may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used.'  [Citation.]"

The majority pays lip service to the plain meaning rule and then ignores it.  While acknowledging the language used is unambiguous, it nonetheless engages in statutory construction to determine whether the electorate really intended to say what it actually enacted.  The end result is a rewriting of the statute so that it comports with the majority's

3.

view of what the voters really intended. The majority has rewritten section 1170.18(c) so that it now states: "*As used in this section only*, 'unreasonable risk of danger to public safety' means …." The majority does so without providing a compelling reason to do so and without showing the plain language used has a "'meaning [that] is "'repugnant to the general purview of the act.'"" (*People v. Leal*, *supra*, 33 Cal.4th at p. 1008.) Because the Act had not previously defined the phrase "unreasonable risk of danger to public safety," the definition in section 1170.18(c) cannot be repugnant or contradictory to the Act, nor does the majority claim the definition is repugnant to the general purview of Proposition 47. For these reasons, I respectfully disagree with the majority on this part of the opinion.

## II. Section 1170.18(c) has no application to defendant's resentencing under the Act

I do concur in the result because there is nothing in Proposition 47 to indicate the definition enacted under section 1170.18(c) is to be applied retroactively to defendant under the Act.

I begin my analysis with section 3 of the Penal Code, which provides that "[n]o part of it is retroactive, unless expressly so declared." "Whether a statute operates prospectively or retroactively is, at least in the first instance, a matter of legislative intent. When the Legislature has not made its intent on the matter clear," section 3 provides the default rule. (*People v. Brown* (2012) 54 Cal.4th 314, 319.) Proposition 47 is silent on the question of whether it applies retroactively to proceedings under the Act. The analysis of Proposition 47 by the legislative analyst and the arguments for and against Proposition 47 are also silent on this question. (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) pp. 34-39.) Because the statute contains no express declaration that section 1170.18(c) applies retroactively to proceedings under the Act, and there is no clearly implied intent of retroactivity in the legislative history, the default rule applies.

4.

Defendant cites *In re Estrada* (1965) 63 Cal.2d 740 to argue retroactive application.

In *Estrada*, the court stated:

> "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*In re Estrada*, *supra*, 63 Cal.2d at p. 745.)

One may argue that under the *Estrada* case, unless there is a "savings clause" providing for prospective application, a statute lessening punishment is presumed to apply to all cases not yet reduced to a final judgment on the statute's effective date. (*In re Estrada*, *supra*, 63 Cal.2d at pp. 744-745, 747-748.) However, the *Estrada* case has been revisited by our Supreme Court on several occasions. In *People v. Brown*, *supra*, 54 Cal.4th at page 324 the court stated: "*Estrada* is today properly understood, not as weakening or modifying the default rule of prospective operation codified in [Penal Code] section 3, but rather as informing the rule's application in a specific context by articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments." "The holding in *Estrada* was founded on the premise that "'[a] legislative mitigation of the penalty *for a particular crime* represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law."'" (*Id.* at p. 325.) In *Brown*, the court did not apply the *Estrada* rule because "a statute increasing the rate at which prisoners may earn credits for good behavior does not

5.

represent a judgment about the needs of the criminal law with respect to a particular criminal offense, and thus does not support an analogous inference of retroactive intent." (*People v. Brown*, *supra*, at p. 325.)

Similarly here, *Estrada* does not control because applying the definition of "unreasonable risk to public safety" in Proposition 47 to petitions for resentencing under the Act does not reduce punishment for a particular crime.[2]  Instead, the downward modification of a sentence authorized by the Act is dependent not just on the current offense but on any number of unlimited factors related to the individual offender, including criminal conviction history, disciplinary and rehabilitation records, and "[a]ny other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (Pen. Code, § 1170.126, subd. (g)(3).)

For this reason also, defendant's argument his equal protection rights would be violated if he is denied retroactive application is unavailing.  In light of the unlimited factors related to individual offenders that inform the exercise of discretion, no two individual offenders may be said to be similarly situated for purposes of resentencing under the Act.

Because section 1170.18(c)'s definition of "unreasonable risk of danger to public safety" does not apply retroactively to the Act, the sentencing court applied the correct standard in exercising its discretion to not resentence defendant.[3]  Since defendant has

---

[2]For this reason, *Holder v. Superior Court* (1969) 269 Cal.App.2d 314, also relied upon by defendant, does not apply because its analysis and conclusion were based on *Estrada* prior to its clarification by subsequent California Supreme Court cases.

[3]Recently in *People v. Chaney* (Oct. 29, 2014 C073949) __ Cal.App.4th __ the Third District Court of Appeal held the definition of "unreasonable risk of danger to public safety" as provided in section 1170.18(c) does not apply retroactively.  I agree.

6.

failed to show an abuse of that discretion, I concur in the majority's affirmance of the judgment.

_____
PEÑA, J.